IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LINCOLN S. MORRIS,

                Plaintiff,                OPINION AND ORDER

  v.

                                            12-cv-319-wmc

MIKE HUEBSCH, DAVID ERWIN,
EDWIN BARDON,  TODD THOMAS,
DANIEL ESSINGTON, and JEFF CALHOUN,

                Defendants.

---

On January 26, 2012, Lincoln Morris was arrested by the Capitol Police and issued a citation for disorderly conduct pursuant to Wisconsin Administrative Code § Adm 2.14(2)(k) for drumming in the State Capitol rotunda.  In this civil suit, Morris seeks damages from the arresting officers for deprivation of his rights under the First and Fourth Amendments of the Constitution.  Morris also sues senior officials in the Wisconsin Department of Administration in their representative capacities, seeking a declaratory judgment that:  (1) § Adm 2.14(2)(k) is facially unconstitutional; and (2) a "no drumming" rule adopted by the Capitol Police in furtherance of § Adm 2.14(2)(k) is also unconstitutional.  Morris also seeks an injunction barring the Department of Administration from enforcing these rules in the future.  The defendants responded with a motion for dismissal of all claims for monetary relief on the basis of qualified immunity, which the court will now grant in part, dismissing all defendants to the extent they have been sued in their personal capacity with respect to plaintiff's Fourth Amendment claims and with respect to plaintiff's First Amendment vagueness claims.  Although it appears

unlikely plaintiff will ultimately succeed on his remaining First Amendment challenge to the "no drumming" restriction, plaintiff has not pled himself out of court on that claim.

FACTUAL ALLEGATIONS

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings." To succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Accordingly, the court must "accept all well-pleaded allegations in the complaint as true," *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000), and "view the facts alleged in the light most favorable to the non-moving party," *Emergency Serv's Billing Corp., Inc. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012). In ruling on a 12(c) motion, a district court "may take into consideration documents incorporated by reference to the pleadings . . . [and] take judicial notice of matters of public record." *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (citation omitted). Consistent with these parameters, the court assumes the following facts to be true for purposes of deciding defendants' motion to dismiss.

**A. The Parties**

Plaintiff Lincoln S. Morris is a resident of Bayfield, Wisconsin and a member of the Red Cliff Band of Lake Superior Chippewa Indians ("Red Cliff Band"). Defendant Mike Huebsch is the Secretary of the Wisconsin Department of Administration ("DOA"). Defendant David Erwin is the Chief Administrator of the Division of Capitol

Police, which is part of the DOA.[1] The remaining defendants also work for the Capitol Police: Edwin Bardon is a detective; Todd Thomas is a sergeant; and Daniel Essington and Jeff Calhoun are both officers.

### B. Events of January 26, 2012

On January 26, 2012, several Lake Superior Chippewa Indians travelled to the State Capitol in Madison, Wisconsin, to voice opposition to proposed mining legislation. Morris was part of this group, and brought with him a handmade spiritual Chippewa drum.

At 12:15 p.m., a five-person drum group from the Bad River Band of Lake Superior Chippewa Indians played a spiritual drum song and Chippewa prayer on the ground floor level of the Capitol rotunda. Morris did not participate. When the Bad River Band finished and left the rotunda, then-Chief of the Capitol Police Charles Tubbs informed Attorney Glenn Stoddard, who was present as a legal representative for the Bad River Band, that there could be "no drumming at any time" in the Capitol pursuant to DOA policies governing public use of the building. Tubbs told Stoddard that members of the public, including the "Solidarity Singers" protest group, were allowed to sing and chant, but that drumming was forbidden.

Fifteen minutes after the Bad River Band drum group finished, Morris took his drum from the upper first-floor balcony, where he had been playing it softly, to the

---

[1] Plaintiff had originally asserted a claim for declaratory and injunctive relief against Charles Tubbs in his official capacity. Mr. Tubbs has since been succeeded as Chief of the State Capitol Police by David Erwin, who has been substituted as the proper official defendant. *See* Fed. R. Civ. P. 25(d).

ground floor of the rotunda. Morris was welcomed by the Solidarity Singers, who were then singing and chanting, and encouraged "to drum a prayer" in opposition to the proposed mining legislation.

After a few minutes of drumming, Morris was approached by officers of the Capitol Police, including Officers Calhoun and Essington. The officers warned Morris that he must stop drumming and leave the Capitol or they would confiscate the drum and arrest him. Morris replied that he was unaware of any restriction on drumming, explained that there had been a misunderstanding, and asserted that he had a constitutional right to pray and protest.

Officer Calhoun reiterated that Morris's action of striking the drum was considered "playing" an instrument, an act forbidden in the Capitol. Sergeant Thomas then directed Calhoun to remove Morris forcibly from the building. Calhoun told Morris that if he did not immediately leave with his drum, he would be arrested and ticketed for disorderly conduct. When Morris stood up with his drum, he was seized and escorted outside.

A short time later, Detective Bardon and Sergeant Thomas directed Officer Calhoun to arrest Morris and issue him a citation for disorderly conduct under Wisconsin Administrative Code § Adm 2.14(2)(k). Calhoun and Bardon then handcuffed and forcefully led Morris to the basement of the Capitol, where they detained him for thirty minutes. Calhoun told Morris that he had been arrested for "causing a disturbance by playing his instrument when he had been told he needed a permit inside

the Capitol to continue his actions." The citation was later dismissed by the Dane County District Attorney.

OPINION

Plaintiff brings suit against defendants Bardon, Thomas, Essington and Calhoun personally for monetary damages under 42 U.S.C. § 1983, and against defendants Huebsch and Erwin in their official capacity for purposes of declaratory and injunctive relief. In particular, plaintiff claims that the defendants: (1) deprived him of his First Amendment right to free speech by prohibiting him from drumming in the Capitol rotunda; and (2) deprived him of his Fourth Amendment right to be free from unreasonable police seizures by forcibly removing him from the rotunda, handcuffing him, and leading him to the Capitol basement for processing of an administrative citation.[2] Defendants' motion for judgment on the pleadings addresses only plaintiff's claims for monetary relief, arguing that: (1) defendants' qualified immunity shields them from personal liability for any arguable violation of plaintiff's First and Fourth Amendment rights; and (2) the complaint fails to state a legal claim against defendant Daniel Essington.

---

[2] Plaintiff has dropped the other claims asserted in his complaint, including his claim for damages against defendants Huebsch and Tubbs personally, as well as his equal protection claim under the Fourteenth Amendment. (*See* Pl.'s Opp. Br. (dkt. #13) 28, 30.)

I. **Qualified Immunity**

Qualified immunity shields government officials from suit for "performing discretionary functions in the course of duty to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (quoting *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995) (internal quotation marks omitted)). When qualified immunity is properly invoked as a defense for discretionary conduct performed as part of a government official's duties, a plaintiff may defeat it by making a two-pronged showing. *Pearson v. Callahan,* 555 U.S. 223, 232-33 (2009). Under the first prong, the plaintiff must "show the [official]'s conduct violated a [legal] right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson,* 555 U.S. at 236. Under the second prong, the plaintiff must show that "the right was clearly established." *Id.*

Whether a right was clearly established at the relevant time is a question of law, *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009), although this inquiry "must be undertaken in light of the specific [factual] context of the case, not as a broad general proposition," *Saucier*, 533 U.S. at 201. In other words, "'preexisting law must dictate, that is, truly compel . . . the conclusion for every like-situated, reasonable government agent that what [he] is doing violates federal law *in the circumstances*.'" *Khuans v. School Dist. 110,* 123 F.3d 1010, 1019-20 (7th Cir. 1997) (italics in original) (quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994).). A plaintiff can show that a right was "clearly established" by demonstrating "that a violation of this right has been

6

found in factually similar cases." *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008). The case must be similar enough to demonstrate clearly that the official's action is illegal, but it need not be "precisely on all fours on the facts and law involved." *Landstrom v. Ill. Dep't of Children & Family Servs.*, 892 F.2d 670, 676 (7th Cir. 1990). In some instances, the violation will be "so clear that a government official would have known that his actions violated the plaintiff's rights" even without the instruction of a comparable case. *Id*. The court concludes that the decision to arrest Morris for violating a no drumming rule presents at least the possibility of such a clear violation of Morris' rights, but it will grant defendants' motion to dismiss on qualified immunity grounds in all other respects.

### A. First Amendment Claim

Plaintiff claims that defendants deprived him of his First Amendment rights when they ordered him to stop drumming in the Capitol rotunda and issued him a "disorderly conduct" citation under Wisconsin Administrative Code § Adm 2.14(2)(k) for not doing so. Plaintiff argues that the prohibition on "disorderly conduct" is unconstitutional on its face, because the phrase is so vague that it chills an inordinate amount of constitutionally protected expression. He also argues that § Adm 2.14(2)(k), as authoritatively construed by the Department of Administration to contain a blanket "no drumming" rule, is an invalid time, place and manner restriction on speech.[3]

---

[3] What plaintiff refers to as "a prohibition on drumming" is likely a prohibition on "performing" in the Capitol without a permit as set forth at §§ I.B and II.A of the Department of Administration's published State Facilities Access Policy. (*See* www.doa.state.wi.us/docview.asp?docid=9038.) However, the court cannot simply assume this in reviewing a motion to dismiss; it must instead look at the allegations in

For purposes of defendants' motion to dismiss on qualified immunity grounds, defendants rely entirely upon the second prong of the traditional two-prong qualified immunity defense. In other words, defendants do not defend their actions as constitutional, but argue only that their actions were not established as clearly *un*constitutional as of January 26, 2012. This court agrees.

Before proceeding to the constitutional issues, it is important to frame the challenged conduct properly: plaintiff is seeking damages against certain police officers for enforcing a Department of Administration regulation. The application of a qualified immunity defense, therefore, turns on whether the police officers should have refused to enforce the regulation because it was clearly constitutionally infirm.

Unsurprisingly, courts are ordinarily sympathetic toward officers who are placed in this situation. For example, with respect to criminal statutes, the United States Supreme Court has observed that:

> A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. Although the matter is not entirely free from doubt, the same consideration would seem to require excusing him from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional on its face or as applied.

*Pierson v. Ray*, 386 U.S. 547, 555 (1967).

---

the complaint, which taken at face value, suggest that the "no drumming" rule is instead an interpretative gloss on the disorderly conduct prohibition found at § 2.14(2)(k) of the Administrative Rules. The complaint also suggests that this interpretive gloss (if it exists) originates with Chief Tubbs himself, if not a higher authority. (*See* Compl. (dkt. #1) ¶26.) For purposes of this opinion, the court will, therefore, treat plaintiff's challenge to the "no drumming" rule as a challenge to § Adm 2.14(2)(k) itself.

While the defendant police officers here were asked to enforce an administrative regulation, rather than a statute, a similar sympathy would appear appropriate. Accordingly, the court asks whether reasonable officers in defendants' position would have known under clearly established law that either § 2.14(2)(k) or the allegedly related "no drumming" rule was unconstitutional either on its face or as applied to plaintiff. See *Marcavage v. City of Chicago*, 659 F.3d 626, 636 (7th Cir. 2011) ("Although the constitutionality of the Policy remains in question, the arresting officer's objectively reasonable reliance on the [regulatory] requirement in effect at the time of the arrest is sufficient to shield him from liability under the doctrine of qualified immunity.").

      i.    **Vagueness and Overbreadth of § Adm 2.14(2)(k)**

Wisconsin Administrative Code § Adm 2.14(2)(k) provides that:

> (2) Pursuant to s. 16.846, Stats., whoever does any of the following shall be subject to a forfeiture of not more than $500: . . . (k) Engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances where the conduct tends to cause or provoke a disturbance in public places or private areas in those buildings and facilities managed or leased by the department, or on state properties surrounding those buildings.

This language is essentially identical to Wisconsin's disorderly conduct statute, Wis. Stat. § 947.01, which has consistently been upheld as constitutional in the face of vagueness challenges. See *City of Oak Creek v. King*, 148 Wis. 2d 532, 545-48, 436 N.W.2d 285, 290-91 (Wis. 1989) (upholding Wis. Stat. § 947.01); *Soglin v. Kauffman*, 286 F. Supp. 851, 853-55 (W.D. Wis. 1968) (same). This general prohibition is, therefore, likely constitutional, rather than *clearly* unconstitutional. As a result, a

9

reasonable officer in defendants' shoes would not have known that § Adm 2.14(2)(k) is unconstitutionally vague under clearly established law.

### ii. The "No Drumming" Rule

This leaves the question of whether under clearly established law the "no drumming" rule is (1) facially unconstitutional, or (2) unconstitutional as applied to Morris. The government may impose reasonable restrictions on the time, place, or manner of protected speech in a forum if the restriction is "justified without reference to the content of the regulated speech, . . . narrowly tailored to serve a significant governmental interest, and . . . leave[s] open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 78, 791 (1989) (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). If the restriction is not content-neutral, on the other hand, the nature of the forum becomes a central question, because this governs the level of scrutiny courts apply. *Frisby v. Schultz*, 487 U.S. 474, 479-80 (1988). While the parties disagree about whether the Capitol rotunda is a "traditional" or a "designated" public forum, that distinction makes little difference here since "strict scrutiny" would apply to either public forum if the regulation is content-based. See *Christian Legal Society v. Walker*, 453 F.3d 853, 865 (7th Cir. 2006).

Based on the pleadings alone, there is arguably *some* uncertainly whether the alleged "no drumming" rule is aimed at expressive content. Certainly, the regulation is content-neutral on its face since it prohibits conduct, not speech. However, the very act of playing a drum can be symbolically expressive under certain circumstances, including

as prayer or protest as would seem the case here. Accordingly, if a facially neutral law has been created to *achieve* content-discriminatory ends, it cannot be considered content-neutral. See *Rock Against Racism*, 491 U.S. at 791 (the "government's purpose [in enacting a law] is the controlling consideration"). The complaint does not say where the "no drumming" restriction comes from or why it was created, but it is at least possible to infer from related alleged facts that the restriction may have been created on the day that plaintiff arrived in the Capitol, as an ad-hoc response to the Native American protests then taking place.

Assuming for the present (without deciding) that the regulation *is* content-based, plaintiff may be able to establish that the no-drumming rule is unconstitutional. Content-based exclusions of certain categories of protected speech in public fora are constitutional only if "necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius v. NAACP Legal Def. & Educ. Fund., Inc.*, 473 U.S. 788, 800 (1985). None of the cases cited by plaintiff is quite on point, but it is difficult to imagine a compelling justification for excluding only Native American drum prayer -- or any other specific category of protected speech for that matter -- from the Capitol rotunda, while allowing similar speech to continue in a venue that has historically been an important public forum for political speech. Granting plaintiff the most favorable reading of the complaint possible and drawing all inferences in his favor, therefore, such a "no drumming" rule would seem unconstitutional unless neutrally applied.

To reiterate, the court doubts that the "no drumming" restriction is *actually* content-based. Most likely it is a content-neutral time, place and manner restriction on conduct that incidentally inhibits speech, and is justified (or at least, is not clearly unjustified) by a significant government interest. However, the constitutionality of the regulation hinges on fact questions that cannot be resolved on the pleadings. Similarly, an individual's right to good faith immunity hinges on what he understood the "no drumming" rule to prohibit and the reasons for its enforcement against Morris. Accordingly, defendants' motion for dismissal based upon qualified immunity will be denied as it pertains to plaintiff's claim arising out of enforcement of a "no drumming" rule.

### B. Fourth Amendment Claim

Plaintiff claims that he was subjected to an unreasonable seizure in two respects: (1) the officers did not have probable cause to seize him; and (2) the officers -- probable cause or no -- employed excessive force in seizing him. While the court cannot say with certainty that the "no drumming" rule is constitutional, it is a separate question whether the defendant officers who arrested plaintiff had probable cause to believe that he had violated the rule. Plaintiff concedes that he was drumming in the rotunda, and that under the terms of a "no drumming" rule he was engaging in an act of *per se* disorderly conduct. Accordingly, the defendants acted with probable cause in arresting plaintiff and citing him under § Adm 2.14(2)(k) -- both for his decision to start drumming and for his initial refusal to stop drumming -- and are entitled to qualified immunity on this claim.

As for the excessive force claim, "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen [are] analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (quotation omitted). In comparison to most excessive force cases, the officers here employed a relatively modest amount of force, which plaintiff essentially concedes. He nevertheless argues that the force employed was plainly excessive under the circumstances.

Specifically, plaintiff alleges that he was "forcefully seized and taken outside the State Capitol." (Complaint, dkt. #1, ¶ 35.) Subsequently, he was "handcuffed . . . forcefully led [] to the basement of the State Capitol building and . . . locked [] in and held [] captive for about thirty minutes" while the officers processed the disorderly conduct citation. (*Id.* at ¶ 42.) Finally, plaintiff's allegations reveal that when the officers instructed him to stop drumming, he responded not with prompt compliance, but rather with an announcement that the officers had no constitutional authority to make him stop. (*Id.* at ¶¶ 30-35.)

Even on those limited facts, the defendant officers could have reasonably decided that it was necessary to use *some* force to make plaintiff stop drumming, even if they were mistaken about the precise amount of force that would be necessary to achieve that end. Moreover, the officers here apparently used very little force: plaintiff includes only a very

13

cursory allegation that he felt physical pain (*id*. at ¶ 59), but fails to allege that he suffered any sort of bodily injury. Although not dispositive, this fact alone suggests restraint by the officers involved. *See Brownell v. Figel*, 950 F.2d 1285, 1293 (7th Cir. 1991) (acknowledging lack of injury as a sign that excessive force was not used). Even with the aid of hindsight and the lenient standard for a motion to dismiss, the alleged facts do not support an inference that the officers used any more force than was necessary, let alone force that would have appeared unnecessary, gratuitous or disproportionate to an officer acting in the moment.

The same can be said for the officers' decision to handcuff plaintiff and lead him by force to the basement of the Capitol after arresting him. The Supreme Court held in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), that a warrantless arrest, including handcuffing, for a minor criminal offense does not violate the Fourth Amendment. *Id*. at 354. Since then, the Seventh Circuit has further clarified that although an "arresting officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury," simply handcuffing a detainee is not excessive force, so long as the officer refrains from using "handcuffs in a manner that would clearly injure or harm a typical arrestee." *Stainback v. Dixon*, 569 F.3d 767, 772-73 (7th Cir. 2009). This is true even when the arrestee is kept handcuffed for approximately twenty minutes or more. *Id.*

As for plaintiff's claim that defendants forcibly led him to the basement while handcuffed, he provides no specific allegations about the techniques used, the force applied, or the pain this caused. In the absence of these details or allegations of an actual

injury, the court cannot infer that excessive force was involved. Accordingly, the court will grant defendants' motion to dismiss the Fourth Amendment claims for damages on qualified immunity grounds.

## II. First Amendment Claim Against Defendant Essington

Finally, defendants have moved to dismiss claims for damages against defendant Daniel Essington on grounds that he was not personally involved in any deprivation of plaintiff's First or Fourth Amendment rights, and thus cannot be found liable under § 1983. *See Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."). It appears from the pleadings that Essington had a hand in the police action that caused plaintiff to stop drumming, and therefore that he may be liable for a potential First Amendment violation, if not for the subsequent alleged Fourth Amendment violations. (*See* Compl. (dkt. #1) ¶30 ("When Calhoun, Essington and other officers approached Morris, they told him he had to stop drumming and leave the State Capitol building with his drum.").) Therefore, the court will allow plaintiff to proceed against Essington on his one remaining damages claim -- his contention that defendants enforced a clearly unconstitutional "no drumming" rule against him -- at least at the pleading stage.

**III. Limited Discovery for Qualified Immunity Purposes**

Although defendants' current motion to dismiss on qualified immunity grounds is only partially successful, defendants will have another chance to argue for qualified immunity by bringing a summary judgment motion on that subject. Following the Seventh Circuit's guidance, before completely lifting the stay in this action, the court will allow a two-month period for discovery narrowly focused on whether qualified immunity applies to plaintiff's remaining First Amendment damages claim. See *Landstrom v. Ill. Dep't. of Children and Family Serv's*, 892 F.2d 670, 674 (7th Cir. 1990) ("[I]n some cases limited discovery may be necessary before a trial court could properly rule on a qualified immunity claim."). Any motion by defendants for summary judgment cabined strictly to issues of qualified immunity filed within the next 90 days will not count against the court's typical limitation to a single summary judgment motion.

ORDER

IT IS ORDERED that:

1. Defendants' motion for partial judgment on the pleadings (dkt. #7) is **GRANTED IN PART AND DENIED IN PART** consistent with the discussion above.

2. The stay is lifted for a period of 60 days for discovery narrowly focused on whether qualified immunity applies to plaintiff's remaining First Amendment damages claim.

3. If defendant files a motion for summary judgment on immunity grounds consistent with the requirements of this court within 90 days of this order, the court's stay will otherwise remain in effect pending a decision on the motion. Failure to file within that time will result in the stay being lifted in its entirety and the setting of a standard scheduling conference.

Entered this 28th day of February, 2014.

BY THE COURT:
/s/

_____
WILLIAM M. CONLEY
District Judge